# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**HEIDI BARBERO,**

       **Plaintiff,**

v.                                          **Case No: 6:21-cv-527-DCI**

**COMMISSIONER OF SOCIAL SECURITY,**

       **Defendant.**

## MEMORANDUM AND DECISION[1]

**THIS CAUSE** is before the Court on Claimant's appeal of an administrative decision denying her application for disability insurance benefits.[2] Claimant originally filed the claim, but it was dismissed on July 11, 2013 under the principle of *res judicata* because there was a prior application denied on March 26, 2007. R. 1193. The Appeals Counsel, however, remanded the case because Claimant submitted new and material evidence. *Id*. On November 17, 2014, the ALJ issued an unfavorable decision, but the Court reversed and remanded the case on March 22, 2017. *Id*. On June 20, 2018, the ALJ issued an unfavorable decision and the Court reversed and remanded the case again. R. 1283. On January 19, 2021, the ALJ denied the claim. R. 1217. Claimant's appeal is before the Court.

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. Doc. 17.

[2] The Social Security Administration revised its regulations regarding the consideration of medical evidence—with those revisions applicable to all claims filed after March 27, 2017. *See* 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017). Claimant filed the claim before March 27, 2017, so the revised regulations do not apply in this action.

Having considered the parties' memorandum and being otherwise fully advised, the Court concludes, for the reasons set forth herein, that the Commissioner's decision is due to be **AFFIRMED**.

## I. Issues on Appeal

Claimant argues on appeal that the ALJ failed to properly weigh the medical opinion evidence consistent with the regulations and Eleventh Circuit precedent. Doc. 31.

## II. Standard of Review

As the Eleventh Circuit has stated:

> In Social Security appeals, we must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations and quotations omitted). "With respect to the Commissioner's legal conclusions, however, our review is *de novo*." *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002).

## III. Discussion

In the most recent decision on appeal, the ALJ found that Claimant's severe impairments were major depressive disorder with anxiety, fibromyalgia, and anemia. R. 1196. The ALJ determined that Claimant had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and specified the following:

> She could lift, carry, push, and/or pull ten pounds occasionally, and frequently only a negligible amount; she could stand and/or walk for two hours and sit for six hours in an eight-hour workday with regular breaks; she could never climb ladders, ropes, or scaffolds; she could occasionally climb ramps and stairs, as well as occasionally stoop, kneel, crouch, or crawl; she was limited to no more than occasional reaching overhead with her bilateral upper extremities; she could have no exposure to unprotected heights or dangerous moving machinery; she could have no concentrated exposure to vibration; she was limited to one-to-five step work tasks

> performed repetitively; she could have no interaction with the general public; and she could have no more than occasional interaction with coworkers and supervisors.

R. 1200.

Claimant's sole issue on appeal relates to the ALJ's treatment of five physicians' opinions. Claimant contends that Drs. Anderton, Phillips, Nay, Olaffson, and Honickman's opinions demonstrate that Claimant cannot perform any competitive work on a regular and continuing basis. Claimant contends that the five physicians' opinions at issue "establish far greater limitations than the ALJ found" and "establish that [Claimant] met her burden of proof to establish that she is 'disabled.'" Doc. 31 at 17. Claimant argues that the ALJ failed to provide legally sufficient reasons for rejecting these medical opinions, which contradict the RFC. *Id*. at 19.

Under the relevant regulations, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179 (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id*. (quoting *Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir. 1981)).

"Generally, the opinions of examining physicians are given more weight than those of non-examining physicians. . . ." *McNamee v. Soc. Sec. Admin*., 164 Fed.Appx. 919, 923 (11th Cir. Jan. 31, 2006) (citing 20 C.F.R. § 404.1527(d)(1)-(2) and (5)). A treating physician's opinion must be given substantial or considerable weight, unless good cause is shown to the contrary. *Winschel*, 631 F.3d at 1179; *see also* 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2) (giving controlling weight to the treating physician's opinion unless it is inconsistent with other substantial evidence). "Good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or

inconsistent with the doctor's own medical records." *Winschel*, 631 F.3d at 1179 (quotation marks omitted).

Given the extensive procedural history of the claims, the relevant time-period ended years ago—July 1, 2001 through December 31, 2006 (the date of Claimant's alleged onset to the date last insured). R. 1217. The ALJ, in the most recent decision that is the subject of the instant appeal, discussed at length the medical record dated prior to and after the date last insured and the testimony—including the testimony Drs. Nay, Anderton, and Phillips—from the September 2014, June 20, 2018, and September 2020 hearings conducted in relation to Claimant's application for benefits.

With respect to the five physicians' opinions, the ALJ summarized the record in part and weighed each separately as follows:

- As for the opinion evidence, at the hearing on June 20, 2018, Richard Nay, Ph.D., a clinical psychologist, testified that the claimant met listings 12.04, 12.06, and 12.08, based upon review of progress prepared by Doyle Phillips, M.D., on September 11, 2016, (Exhibit 1F), which indicated history of fibromyalgia, obsessive compulsive disorder, and situational depression (Exhibit 1F). Dr. Nay further indicated that his opinion was also based on Dr. Thomas Lafferty's progress notes on October 2, 2006, (Exhibit 3F), which also indicated a history of fibromyalgia, and referred the claimant to psychiatric treatment (Exhibit 3F). Dr. Nay also testified that his opinion was also consistent with Dr. Gary Honickman's consultative examination (Exhibit 6F). Dr. Nay reviewed medical records and examined the claimant in May 2018 (Exhibit 39F).

  The undersigned gives little weight to Dr. Nay's opinion issued during his testimony on June 20, 2018, since it is inconsistent with the medical evidence he cited during the testimony.

- On May 11, 2018, Dr. Nay submitted a psychiatric review form, and opined that the claimant met Social Security Listings 12.04, depressive disorder, 12.06, anxiety disorder, and 12.08, personality disorder. Dr. Nay also opined that the claimant has extreme limitations in her ability to "understand, remember, or apply information," "interact with others," "concentrate, persist, and maintain pace,", and "adapt or manage oneself" (Exhibit 40F).

> The undersigned gives little weight to Dr. Nay's opinion, since it is inconsistent with the overall evidence of record.

- On May 11, 2018, Dr. Nay performed a psychological evaluation of the claimant, and opined that the claimant had significant functional limitation impairments due to mental health symptoms; that her personality disorder would preclude her ability to be successful in any job setting; that she is unable to adapt to even minimal stressors; that she is completely and totally disabled; that she is unable to work full-time: that she is unable to maintain even part-time employment; and that her psychological problems are long-standing and contributed to her significant disability prior to the DLI (Exhibit 39F).

> The undersigned gives little weight to Dr. Nay's opinion. The examination conducted over a decade after the claimant's date last insured, December 31, 2006, is not sufficient to support the opined limitations as to the relevant period. Further, Dr. Nay's opinion is inconsistent with evidence from examinations during and nearer in time to the relevant period, that is, period from her alleged onset date of July 1, 2001 through her date last insured of December 31, 2006.

- On June 4, 2018, Dr. Nay completed a mental residual functional capacity, and opined that the claimant was markedly to severely limitation in: understanding and memory, concentration and persistence, social interaction, and adaptation (Exhibit 41F).

> The undersigned gives little weight to Dr. Nay's opinion. His examination was conducted over a decade after the claimant's date last insured, December 31, 2006. Further, Dr. Nay's opinion is inconsistent with evidence which was obtained during and nearer the relevant period, that is, period from her alleged onset date of July 1, 2001 through her date last insured of December 31, 2006.

- On April 26, 2018, Kristjan Olafsson, Ph.D., performed a neuropsychological evaluation of the claimant, and opined that the claimant's functioning was impacted by significant depression and anxiety, she would be likely to experience difficulty with tasks requiring sustained attention, and would likely to be easily distracted when engaged in tasks. Dr. Olafsson also opined that the claimant's processing speed is slow and she would likely require increased time to complete tasks, that her memory is impaired, that the information encoded suggests that her memory may be intact but retrieval may be an issue. Further, Dr. Olafsson opined that the claimant's daily functioning is likely impacted by mood disorder, personality dynamics, and impulsivity, and that her premorbid functioning likely in the average range. Dr. Olafsson also opined that the claimant "does not appear capable of maintaining any degree of employment at this time;" and "does not appear capable of maintaining attention to work-related tasks" and that she "does not appear capable of managing work-related stressors, or interacting appropriately with coworkers at supervisors" (Exhibit 37F).

> The undersigned considered Dr. Olafsson's opinion, but gave it little weight, because it was based upon an examination conducted over a decade after the DLI, December 31, 2006. Further, Dr. Olafsson's opinion is inconsistent with evidence which was obtained during and nearer the relevant period, that is, period from her alleged onset date of July 1, 2001 through her date last insured of December 31, 2006.

- On March 2, 2007, Gary Honickman, Ph.D., saw the claimant in a psychological consultative examination, and observed that the claimant displayed sad expression, had no unusual mannerisms, was fully oriented, was "moderately to severely depressed," but had no hallucinations. Dr. Honickman also noted that the claimant was able to recall 5 out of 6 digits backwards, was able to successfully recite the alphabet, counting, serial threes, and had good fund of general knowledge. Dr. Honickman also noted that the claimant reported a history of treatment for depression for 9 months after the death of her mother in 1988, as well as admitting to fairly full range of daily activities, including cleaning, meal preparation, watching TV, and using computer. Finally, Dr. Honickman opined that the claimant was suffering from major depressive disorder, and that she could manage her finances (Exhibit 6F).

    The undersigned gives significant weight to Dr. Honickman's opinion and findings, since he examined the claimant, and based his findings upon objective psychological testing and upon the claimant's subjective presentation. Further, Dr. Honickman's opinion is consistent with the overall, and contemporaneous, examinations of record.

- On March 25, 2014, Gary Honickman, Ph.D., a psychologist, examined the claimant, and opined that the claimant suffered from major depressive disorder and personality disorder, that the claimant had a Global Assessment of Functioning (GAF) score of 45, that the onset of severe depression occurred in 1990, and that her symptoms interfered with interpersonal relationships (Exhibit 27F).

    The undersigned considered all of Dr. Honickman's opinion, but gave it only little weight, since they were based upon an examination conducted over ten year after the DLI, and, the evidence prior to the DLI is insufficient to support the degree of impairment suggested by Dr. Honickman, as it demonstrated above. Further, Dr. Honickman's opinion is inconsistent with Dr. Honickman's prior examination of the claimant, on March 2, 2007, that showed that, despite his diagnostic findings, the mental status examination obtained on that occasion was mostly within normal limits. . . . Furthermore, Dr. Honickman's opinion is also not internally consistent with his own most recent examination.

- On April 5,2014, Dr. Honickman also opined that the claimant had marked limitations in activities of daily living, social functioning, concentration and

pace, had repeated episodes of decompensation, and met Social Security Rulings 12.04, depressive disorder, and 12.08, personality disorder. (Exhibit 28F/12).

The undersigned considered all of Dr. Honickman's opinion, but gave it only little weight, since the evidence prior to the DLI is insufficient to support the degree of impairment suggested by Dr. Honickman, as discussed above. Further, Dr. Honickman's opinion is inconsistent with Dr. Honickman's prior examination of the claimant, on March 2, 2007, that showed that, despite his diagnostic findings, the mental status examination obtained on that occasion was mostly within normal limits.. . . Furthermore, Dr. Honickman's opinion is also not internally consistent with his own most recent examination.

- On April 5, 2014, Dr. Honickman opined that the claimant had moderate to marked limitations in understanding and memory, concentration and persistence, social interaction, and adaptation (Exhibit 29F).

  The undersigned considered Dr. Honickman's opinion, but gave it only little weight since the evidence prior to the DLI is insufficient to support the degree of impairment suggested by Dr. Honickman, as it demonstrated above. Further, Dr. Honickman's opinion is inconsistent with Dr. Honickman's prior examination of the claimant, on March 2, 2007, that showed that, despite his diagnostic findings, the mental status examination obtained on that occasion was mostly within normal limits.. . . Furthermore, Dr. Honickman's opinion is also not internally consistent with his own most recent examination.

- On January 7, 2013, Doyle C. Phillips, M.D., who treated the claimant during the relevant period, opined that claimant suffers from multiple ailments, including fibromyalgia, anemia, and depression. Dr. Philips also opined that the claimant's medications interfere with the ability to perform her duties, and that her problems are long standing, and have contributed to her disability prior to December 31, 2006 (Exhibit 23F/2).

  The undersigned gives no weight to the part of the opinion that suggests that the claimant was disabled during the relevant period, since such findings are reserved to the Commissioner. The undersigned gives only some weight to the part of Dr. Phillips' opinion that addresses diagnoses and medication effects, since the doctor did treat the claimant during the relevant period. The undersigned notes that such diagnoses, treatment, and the part of the opinion that suggests that the medication interferes with duties are only partially consistent with Dr. Phillips' opinion, as his treatment notes do not support limitations beyond the limits described by the residual functional capacity listed above.

- On October 9, 2012, Doyle C. Phillips, M.D., who treated the claimant during the period at issue, opined that the claimant's symptoms began prior to the DLI,

that the claimant cannot work even in low stress jobs, would miss more than four days of work a month, is in constant pain, can sit for four hours and stand or walk for less than two hours in an eight-hour workday. Dr. Philips also opined that the claimant must elevate her legs above her heart for 20% of the day, and can never lift even 10 pounds (Exhibit 16F, 21F).

The undersigned gives no weight to Dr. Phillips' opinion, since it is inconsistent with his own progress notes during the relevant period.

- On October 8, 2012, Gary Honickman, Ph.D., a psychologist, examined the claimant, and opined that the claimant suffered from major depressive disorder, that the she had a GAF of 50, and that fear of contracting AIDS was a significant source of her depression (Exhibit 20F).

  The undersigned considered Dr. Honickman's opinion, but gave it only little weight, since it is inconsistent with Dr. Honickman's prior examination of the claimant, on March 2, 2007, that showed that, despite his diagnostic findings, the mental status examination obtained on that occasion was mostly within normal limits.. . . Furthermore, Dr. Honickman's opinion is also not internally consistent with his own most recent examination (Exhibit 27F).

- On October 8, 2012, Dr. Honickman also opined that the claimant had marked limitations in activities of daily living, social functioning, concentration and pace, had repeated episodes of decompensation, and met Social Security Ruling 12.04, depressive (Exhibit 19F/11).

  The undersigned considered Dr. Honickman's opinion, but gave it no weight, since it is inconsistent with Dr. Honickman's prior examination of the claimant, on March 2, 2007, that showed that, despite his diagnostic findings, the mental status examination obtained on that occasion was mostly within normal limits.. . . Furthermore, Dr. Honickman's opinion is also not internally consistent with his own most recent examination (Exhibit 27F).

- On October 8, 2012, Dr. Honickman opined that the claimant had mostly moderate to marked limitations in understanding and memory, concentration and persistence, social interaction, and adaptation (Exhibit 18F).

  The undersigned considered Dr. Honickman's opinion, but gave it only little weight, since it is inconsistent with Dr. Honickman's prior examination of the claimant, on March 2, 2007, that showed that, despite his diagnostic findings, the mental status examination obtained on that occasion was mostly within normal limits.. . . Furthermore, Dr. Honickman's opinion is also not internally consistent with his own most recent examination (Exhibit 27F).

- On September 15, 2020, Jessica Anderton, Psy.D, examined the claimant, and opined that she agreed with Dr. Olafsson's opinion of May 4, 2018, (Exhibit

> 37F), that the claimant "does not appear capable of maintaining any degree of employment at this time," "does not appear capable of managing work-related stressors, " or interacting appropriately with co-workers and supervisors" (Exhibit 53F/9). Dr. Anderton also opined that she agreed with Dr. Phillips' opinion that the claimant's problems were "long-standing in nature and had contributed to her significant disability prior to December 31, 2006." (Exhibit 53F/10). Dr. Anderton further opined that the claimant's symptoms appeared to be severe enough to preclude employment in 2001, but that the record "certainly support the presence of severe symptoms since 2004, and with additional worsening in 2006 around the time of her husband's car accident." Finally, Dr. Anderton opined that the claimant would be "capable of managing [benefits] independently in her own best interests" (Exhibit 53F/10). On September 24, 2020, Dr. Anderton further opined that the claimant met listings 12.04, 12.6, and 12.08 between 2001 and 2004, and would have extreme limitations in "interacting with others," and in "concentration, persistence, and pace," as well as marked limitation in "adapting or managing herself" (Exhibit 54F). On September 24, 2020, Dr. Anderton opined that the claimant would have moderate limitations in her ability to understand and remember very detailed instruction, and ability to carry out detailed instructions. Dr. Anderton further opined that the claimant had severe limitation in her ability to maintain attention, and concentration for extended periods, and to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerance. Finally, Dr. Anderton opined that the claimant had marked to severe limitations in most areas of social interaction and adaptation (Exhibit 55F). During the hearing, Dr. Anderton further explained her written opinions, and that the claimant's impairments and severity began prior to 2006, more likely around 2004, even though there is less evidence in 2001. Dr. Anderton explained that she based her conclusion on medical records contained in Exhibits 1F through 8F, as well as upon her examination of the claimant, as well as the claimant's history of fibromyalgia, which has secondary psychological symptoms that further diminished the claimant's overall mental capacity.
>
> The undersigned gives little weight to Dr. Anderton's opinion, since her opinion that the claimant's symptoms were present at listing levels prior to the DLI is inconsistent with the contemporaneous objective evidence of record.

R. 1204-1214.

But the ALJ did not stop with these brief statements on the assignment of weight. Instead, after each summary the ALJ cited to and described the record in support of each finding. *Id*. Namely, the ALJ discussed the specific records from 2004 through 2007 and compared them to the physicians' opinions dated many years after the date last insured. For example, with respect

to the ALJ's determination that Dr. Nay's June 4, 2018 opinion was entitled to little weight, the ALJ explained:

> More specifically, on June 7, 2004, June 23, 2004, March 14, 2005, and October 12, 2005, Dr. Phillips observed that the claimant was well developed, well groomed, had normal heart and lung sounds, normal neurological findings, as well as normal examination of all major organs and systems, noting no range of motion or strength deficits. During those same examinations, Dr. Phillips observed that the claimant was oriented in all spheres, had good recent and remote memory, normal mood, normal insight, and indicated no deficits in attention or concentration (Exhibit 1F/17, 18, 19, and 20). On October 4, 2006, Dr. Byrd observed the claimant was sad, tearful, and "quite anxious," but mental status examination findings were otherwise normal (Exhibit 4F). Further, on October 2, 2006, Dr. Lafferty's examination showed normal mental examination findings and he noted that the claimant's reported "brain fog" had resolved (Exhibit 3F). Although Dr. Lafferty observed 18 of 18 tender points, and tenosynovitis in the bilateral anterior ankles, he also observed no synovitis in all other major joints, full range of motion in all major joints, and full strength in all major muscle groups. Dr. Lafferty also observed negative straight leg raise bilaterally, normal sensory findings, and normal examination of all major organs and systems. (Exhibit 3F/3). In the same manner, On March 2, 2007, Dr. Honickman's consultative examination showed that, despite his diagnostic findings, the mental status examination obtained on that occasion was mostly within normal limits. Particularly, during the psychological consultative examination. Dr. Honickman observed that the claimant was oriented in all spheres, hallucinations were denied, she was able to recall six digits forward and five digits, and the alphabet in 6 seconds with no errors. Dr. Honickman also observed counted backwards from 90-1 in 9 seconds with no errors, performed serial threes from 1-50 in 28 seconds with no errors, and demonstrated a good fund of general information (Exhibit 6F/2). Therefore, Dr. Nay's opinion is given little weight, as it is not well supported and it is inconsistent with Drs. Phillips, Byrd, Lafferty, and Honickman's examinations.

R. 1207.

As the Claimant correctly points out, the ALJ mostly cited to this same record regarding Drs. Phillips, Byrd, Lafferty, and Honickman's findings in support of the weight assigned to the physicians' opinions—including Dr. Phillips and Honickman's own opinions—that are at issue on the appeal. *See*, R. 1204-1215. The ALJ then concluded with the following summary:

> The record contains limited objective medical evidence from 2004 to the DLI and into 2007, but numerous medical opinions, dated well after the expiration of the DLI in this case, assigning marked, listing-level mental limitations prior to the DLI.

> The undersigned has carefully reviewed the medical and psychological opinions in this case in light of the evidence of record documenting the claimant's condition from the alleged onset date through the DLI, also giving careful attention to examinations dated in 2007. After careful consideration of all of the medical and other evidence—particularly, treatment notes from Drs. Phillips, Lafferty, and Byrd, 2007 consultative examinations by Drs. Honickman and Field, and medical opinion evidence, as well as the claimant's reports of her daily activities and her course of conservative treatment—the undersigned concludes that the above residual functional capacity is more than adequate to account for the claimant's limitations during the relevant period.

R. 1211.

Claimant challenges that conclusion. Claimant argues that Drs. Anderton, Phillips, Honickman, and Nay's opinions, if properly credited, establish limitations, which each preclude a sustained competitive employment. Claimant asserts that of significance are Drs. Phillips, Honickman, and Nay's opinion that Claimant is at least markedly limited in the ability to accept instructions and respond appropriately to criticism from supervisors and in the ability to get along with coworkers; and Dr. Anderton's opinion that Claimant has marked to extreme limitations in interacting with others and concentration, persistence, pace, and market limitations in adaption and managing herself. Doc. 31 at 18. Claimant adds that Dr. Phillips' opinion establishes her limitations with sitting, standing, and walking, for an 8-hour workday, resulting in Claimant's inability to perform sustained work activity. *Id*. at 17. Also, Claimant points out that Drs. Nay and Anderton both opined that Claimant meets listings 12.04, 12.06, and 12.08, establishing that Claimant is disabled. *Id*.

Specifically, Claimant argues that the ALJ gave "no obvious consideration" to how treating source opinions should be evaluated under the regulations. Claimant asserts the ALJ made no mention of factors which favor an award of benefits under § 404.1527 such as the length and frequency of the source's treatment relationship or the nature of the physicians' specialties. *Id*. at 19-20. Claimant also challenges the ALJ's continued "main rationale" for rejecting Dr. Nay's

opinion because the District Court already disagreed with the conclusion that the opinion was based on an examination over a decade after the DLI and remanded the case accordingly. *Id.* at 23.[3]  Overall, Claimant attacks the decision as an improper lay opinion repetitive in nature, which fails to provide legally sufficient "good reason" to reject the medical opinions.

The Court is not persuaded.  First, the Court does not necessarily agree with Claimant's conclusion that the ALJ failed to take into consideration the nature of the physicians' relationship with Claimant and the § 404.1527 factors.  The ALJ noted the physicians' specialties or degrees and whether the physicians examined or treated Claimant and discussed at length throughout the decision the physicians' findings in the context of when the examination or treatment occurred.  In any event, while the Court recognizes that the ALJ should consider certain factors in determining the weight to give to a medical opinion—which the Court finds occurred here—the ALJ is not required to address each of the factors.[4]  *See Lawton v. Comm'r of Soc. Sec.*, 431 Fed. App'x 830, 833 (11th Cir. 2011) (finding that the ALJ is not required to explicitly discuss each factor set forth in §§ 20 C.F.R. 404.1527(c), 416.927(c), but rather provide good cause for rejecting a treating physician's medical opinion).  Accordingly, to the extent that Claimant seeks an assignment of error because the ALJ failed to address *even more specifically* these factors, the Court does not find that Claimant is entitled to relief.

---

[3] Claimant states that the "[t]his Court specifically articulated 'the record consistently reflects that Dr. Nay's opinions are based on additional sources, and a statement that implies otherwise mischaracterizes the record.'" Doc. 31 at 23, citing R. 1276.

[4] Specifically, under § 404.1527, the ALJ should consider (1) whether the source had examined the claimant; (2) whether the source was a treating physician; (3) the length of the treatment relationship and how often the physician had examined the claimant; (4) the nature and extent of the treatment relationship; (5) whether the medical evidence supports the opinion; (6) consistency; (7) specialization; and (8) other relevant factors.'"

Second, the Court does not agree with Claimant's position on the ALJ's treatment of Dr. Nay's opinions. The District Court's remand dealt specifically with the ALJ's characterization of Dr. Nay's opinion(s) on the last appeal. Briefly, the ALJ in the previous decision found the following with respect to Dr. Nay:

> The undersigned considered Dr. Nay's opinions and his testimony at the hearing, but gives this evidence only little weight. ***Dr. Nay's opinions were based upon an examination conducted over ten year after the DLI and the claimant's self-reports. The evidence prior to the DLI is inconsistent with these opinions. The pre-DLI medical records, as discussed above, fail to support the degree of impairment to which Dr. Nay opined.***

R. 1272.

On appeal, the Court found that "the ALJ's statement that Dr. Nay's opinions are 'based upon an examination conducted over ten year[s] after the DLI and the claimant's self-reports,' while perhaps technically accurate to the extent that Dr. Nay did rely on those sources, is materially incomplete. Indeed, the record consistently reflects that Dr. Nay's opinions are based on additional sources, and a statement that implies otherwise mischaracterizes the record." R. 1276. The Court also decided that the second reason was insufficient because it was conclusory.[5] R. 1273. Importantly, the Court found that the ALJ's mischaracterization of Dr. Nay's opinion was not harmless and required reversal because the Court already found that the only other reason for discounting the opinion was conclusory and precluded proper review. R. 1278.

It appears that Claimant raises the same argument against the ALJ's treatment of Dr. Nay's opinion by pointing out that "this Court already rejected the ALJ's contention that Dr. Nay's opinion was based on his examination ' over a decade after' her DLI in January 2020." Doc. 31 at 23. Claimant states that "[w]hile the ALJ deleted the word 'based on' in her 2021 decision, the

---

[5] The Court found that the ALJ did not specify what evidence she was referring to when she found that the evidence prior to the DLI is inconsistent with Dr. Nay's opinions. R. 1273.

- 13 -

first statement in her assessment of Dr. Nay's opinions is that his examination was conducted over a decade after the DLI, demonstrating this continues to be her main rationale for rejecting his opinions." *Id*.

As an initial matter, the Court notes that the ALJ in the most recent decision spent three pages of discussion on Dr. Nay's findings and recognized at length that Dr. Nay's testimony was based on other medical evidence including Dr. Phillips and Dr. Lafferty's progress notes and Dr. Honickman's consultative examination. R. 1201; 1204-1207. As such, it appears that the ALJ's decision accounted for the additional sources that were the bases for the opinion(s). Also, while Claimant attempts to minimize the ALJ's removal of the words "based on," the edit is significant. It is not disputed that the examinations occurred over 10 years after the date last insured and a notation to that fact is not error or a misstatement of the record.

But assuming *arguendo* that the ALJ did not adequately take into consideration that Dr. Nay's opinions were also based on additional sources, the Court finds that the ALJ sufficiently discussed the evidence found to be inconsistent with Dr. Nay's opinion(s) and otherwise stated with particularity why the opinions were discounted. Unlike the previous appeal, the ALJ offered more than conclusory statements, which do nothing but leave the Court to guess what particular records support the decision. Here, the ALJ provided citations to the various records and provided an analysis as to why the ALJ assigned the weight to the physician's findings. Accordingly, the Court finds that the ALJ based the decision on substantial evidence.

Third, it seems that Claimant's contention that the ALJ improperly relied on the ALJ's lay opinion is based on the fact that there is no opinion from a treating or examining source to support the RFC. There is no requirement, however, that an ALJ's RFC must be based on a physician's opinion. *See Green v. Soc. Sec. Admin.*, 223 Fed. App'x 915, 923 (11th Cir. 2007) (rejecting a

claimant's argument that the ALJ's RFC must be based on a physician's opinion).  While the ALJ considers medical opinions in assessing the RFC, it is the ALJ's responsibility to determine the ultimate issue of the Claimant's RFC, and not the physicians.  Here, the ALJ decided on the record as a whole, which was neither incomplete nor inadequate, and the ALJ committed no error in formulating the RFC from the record before her.  The ALJ did not, as Claimant contends, impermissibly base the disability determination on the ALJ's own lay opinion.  In other words, the Court finds that the ALJ thoroughly reviewed the medical evidence and explained the weight accorded to each physician's opinion.  The ALJ's weighing of the opinion evidence, combined with the summation of the medical evidence of record, shows that the RFC determination was based on a careful analysis.

Fourth, the Court rejects Claimant's argument that the ALJ's repetitive citation to a "handful" of records to discount the weight afforded to the physicians' opinions demonstrates that the opinions are actually consistent with one another and the ALJ only "cherry-picked facts" to support the non-disability finding.  Notably, the relevant time-period ended years before several of the opinions were offered and the ALJ was tasked with determining how the evidence had bearing on the Claimant's disability.  While the ALJ's citations to certain records may seem repetitive as Claimant describes, the Court is not convinced that the ALJ ignored evidence that points to a disability finding.  Instead, the ALJ carefully compared all the records to highlight any inconsistencies and to support the weight determination.  The ALJ devoted nearly 14 pages of the decision to discuss the evidence with detailed citations to the record and the reasons for rejecting or discounting the opinions.  In essence, Claimant is attempting to have the Court reweigh the evidence, which it will not do.  *Winschel*, 631 F.3d at 1178 (11th Cir. 2011).  The ALJ demonstrated good cause supported by substantial evidence for the decision.

**IV.     Conclusion**

For the stated reasons, it is **ORDERED** that:

1. The final decision of the Commissioner is **AFFIRMED**; and

2. The Clerk is directed to enter judgment for the Commissioner and close the case.

**ORDERED** in Orlando, Florida on September 7, 2022.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE